THOMAS ANDERSON v. NELSON BURNHAM.

1. TITLE *by Adverse Possession.* Possession of land by an adverse occupant for more than 15 years, which is actual, notorious, continuous, and exclusive, will give title thereto, although such possession is entirely destitute of color of title.

2. RESIDENCE, *When not Essential.* Where there is subjection to the will and dominion of the occupant manifested in some appropriate manner adapted to the condition and location of the land, a residence thereon is not essential.

3. EVIDENCE —*Adverse Possession.* The evidence examined, and *held* to be sufficient to show adverse possession by the occupant of the land in controversy.

*Error from Allen District Court.*

ACTION by *Burnham* against *Anderson*, to recover land. Judgment for plaintiff at the adjourned June term, 1890. The defendant comes to this court. The facts appear in the opinion.

*Ewing & Bennett*, and *Oscar Foust & Son*, for plaintiff in error:

A single question is presented by this record to be passed upon by this court, and that is, the application of the 15-year statute of limitations; and out of this proposition, and necessarily involved in this case, is the doctrine of tacking possessions and as to what constitutes adverse possession. On the proposition of tacking possessions, we think the doctrine so well established that when anyone in possession of lands (under claim or color of title) contracts with and sells to another said lands, and the vendee, under and in pursuance of such contract, enters into possession of same, that in an action against such vendee for possession of lands by holder of record title such vendee can legally defend, and tack his possession to that of his vendor through whom he claims, and if the combined possessions are over 15 years, it will defeat such ejectment, so far as time and possession are concerned. This proposition, we think, is so fully established that a citation to but a few authorities is needed:

"It will be sufficient if the possession is held by different persons in succession, holding in privity with each other or with the one who claims title by such possession." 3 Smith's L. C., 9th Am. ed., p. 1988, and cases cited; Tied. Real Prop., § 714, and cases cited; 3 Washb. Real Prop., p. 156, note 4; *Yeamans v. James*, 27 Kas. 195; *Stellinsche v. Lamb*, 18 Neb. 619; *Cooper v. Ord*, 60 Mo. 420; *Hanson v. Jordan*, 65 Md. 25; *St. Paul v. C. M. & St. P. Rly. Co.*, 49 N. W. Rep. 17.

A mere trespasser upon the lands of another (the government excepted) gains an incipient title, (*Rosa v. M. K. & T. Rly. Co.*, 18 Kas. 127,) which will ultimately ripen into an

absolute fee. *Bicknell v. Comstock*, 113 U. S. 149; 3 Smith's L. C., 9th Am. ed., 1990, and cases cited.

"A mere trespasser, without color of right or title, who has been in actual possession of real estate for 15 years, claiming title thereto, becomes the owner of the property by virtue of the statute of limitations," etc. *Wood v. M. K. & T. Rly. Co.*, 11 Kas. 323, *et seq.*; *Fitzgerald v. Brewster*, 47 N. W. Rep. (Neb.) 475.

To establish an adverse possession, actual, personal and continuous residence on property is not required, if there are evidences of occupancy at all times, which are open and visible to anyone coming there, of such nature that anyone would naturally suppose that whoever put them there claimed the land.

*Hutchings & Keplinger*, for defendant in error:

The defendant, plaintiff in error, relies on the 15-year statute of limitations. To maintain his plea, he has to unite the alleged possession of his grantor, Starkey, to his own possession, under a deed from Starkey made in 1881. The action was commenced in July, 1889. Therefore, the character, extent and fact of Starkey's possession from July, 1873, down to July, 1889, are the material questions in the case. For two distinct reasons, Starkey's possession was not such as to give him the benefit of the statute.

If Starkey had color of title to the entire quarter, his occupancy and actual possession of any portion, however limited, coupled with a claim at all, would give him constructive possession of all; but unless he has color of title to all, his adverse possession cannot be extended beyond the portion actually occupied. 15 S. W. Rep. 170. Starkey was the only one who had possession prior to 1881, and he certainly did not have color of title. Color of title is anything in writing purporting to convey title to the land. *Vial v. Robinson*, 70 Ga. 809. To constitute color of title, one must have paper title. *Hamilton v. Wright*, 30 Iowa, 486; *Provst v. Johnson*, 9 Mart. (La.) 123. What constitutes color of title is one of

law for the court.  *Packard v. Mass*, 8 Pac. Rep. 818.  Color of title is that which in appearance is title but which in reality is no title.  3 Am. & Eng. Encyc. of Law, p. 276.

It will be observed that Starkey never made a homestead or preëmption filing, and, if we rightly remember the record, he never offered or attempted to do so.  Even if he had done so, he would not have had color of title for the purposes of the statute of limitation.  *Buford v. Bostwick*, 38 Tex. 53; *Clark v. Smith*, 59 id. 275.

The strength of its weakest link measures the strength of the chain, and we call attention to the period from July, 1874, until 1879, and we submit that the evidence does not show affirmatively that defendant had constructive or actual possession of any portion of the quarter section during that period, with the possible exception of about eight acres, and if the defendant wished to reclaim that portion from within the operation of our paper title, he should have informed the court what and when it was.  The burden of escaping our paper title rested on him.

Whatever rights he might have had in 1866, when he first went on the land, to object to a sale of the land by the government to other parties, he had no right to make such objections in 1874, when the land was patented to the railroad company, because he had taken no steps whatever to acquire title under the homestead or preëmption law for a period of eight long years.  We submit that the mere fact that Starkey continued from year to year to cultivate an eight-acre patch is not sufficient evidence to show that he entertained the idea of holding the land against the railroad company or its grantees.  After the issue of the patent, Starkey was a mere squatter, and no statute of limitation would be given him until he denied the title of the patentee.  *Humbert v. Trinity Church*, 24 Wend. 604.

Starkey's possession, such as it was, originated in 1866.  If adverse at all prior to 1879, we have no evidence of the fact, save and except his testimony on the witness stand, where he says his entry was for the purpose of acquiring title

under the homestead or preëmption law. Prior to 1879, there was nothing in his conduct to indicate or give notice of any such purpose; on the contrary, his acts clearly indicate the contrary.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by Nelson Burnham against Thomas Anderson to recover 160 acres of land in Allen county. To sustain his right of recovery, Burnham showed a patent from the United States to the Missouri, Kansas & Texas Railroad Company, dated November 3, 1873, and also a chain of title from the railroad company through several conveyances to himself. The patent and the instruments of conveyance were duly recorded in the office of the register of deeds. Anderson rests his claim of title upon adverse possession of himself and grantor for more than 15 years prior to the commencement of the action. Upon the question of adverse possession, the only evidence produced was that offered by Anderson. It showed that Anderson purchased the land from C. O. Starkey in 1881, who then conveyed such interest or title as he had to Anderson by quitclaim deed. In 1866, while it was yet government land, and subject to entry by settlers, Starkey entered upon it with a purpose of procuring a title thereto under the laws of the United States relating to public lands. He then surveyed out the land and placed posts or stakes at each corner of the quarter section, indicating the boundaries and extent of his claim. He broke or plowed a portion of it, which was cultivated and put in crops every year thereafter until the land was sold to Anderson. Hedgerows were broken out, and in 1868 he built a hay barn and corncrib which was a permanent structure and a visible evidence of occupancy. He used that portion of the land not in cultivation as a meadow, cutting and putting up hay thereon each year of his occupancy. He was an unmarried man until 1879, and did not build a residence upon the property until that year, but from the time that he entered upon it until the residence was built, he lived with

his father upon an adjoining farm.  At no time was his pos-session interrupted, and, in the vicinity where it was located, it was known and recognized as Starkey's claim.  He plowed entirely around the quarter section 20 12-inch furrows, built a house and stable, planted 300 fruit trees, lariated and herded his stock upon it, and remained in undisputed possession until it was sold and transferred to Anderson, in 1881.  Anderson immediately took possession, fenced and cultivated all but 75 acres, which was put in pasture, planted an additional orchard, built other buildings, and resided upon the farm continuously until the commencement of the action, which was August 6, 1889.  There was no pretense of possession by Burnham, nor by any of his grantors.  On the other hand, it is shown that an agent of the railroad company, who was engaged in locating and appraising the lands granted to the company, had notice of Starkey's possession as well as of the claim which he made to the land.  It is clear from what has been stated, that there has been an actual occupancy by Anderson and his grantor, clear, positive, notorious, and continuous, for more than 15 years before the commencement of the action.  Did such occupancy constitute adverse possession which ripened into a good title as against the legal owner?  Starkey could obtain no right against the United States by reason of his possession, but it appears that the title passed from the gov-ernment in 1873, and there was a lapse of more than 16 years thereafter before the possession was challenged.  During all that time, Anderson and his grantor were claiming and hold-ing in hostility to the rights of the railroad company and those holding under it.  It is true that Starkey had no paper title, but this is not essential to adverse possession nor to the acquirement of title by virtue of the statute of limitations. Our statute does not, as do those of some of the states, make color of title an essential element in a title by limitation. (Civil Code, § 16.)   In *Wood v. Railway Co.*, 11 Kas. 324, 348, it is said that,

"A mere trespasser without color of right or title, who has been in the actual possession of real estate for 15 years, claim-

ing title thereto, becomes the owner of the property by virtue of the statute of limitations, if the property has been owned during all that time by some individual or individuals, and not by the United States. Mere possession, therefore, of lands to which the government has parted with its title, for any period, however short, with a claim of ownership, may be said to be an incipient or inchoate title, for such a possession will in time ripen into a complete, perfect and absolute title."

This doctrine was reasserted in *Rosa v. Railway Co.*, 18 Kas. 127. It is the holding of the notorious and exclusive possession of the land in hostility to the rights of the owner which gives the title, and not any mere instrument or paper under which claim is made. Possession by any adverse occupant, which is actual, continuous, and exclusive, will give title when the bar of the statute becomes com-

1. Title by adverse possession. plete, although such possession is entirely destitute of color of title. The difference between title acquired by adverse occupancy under color of title and without such color is, that under the former the color of title gives character to the possession, and gives rise to the presumption that the claimant intends the entry shall be coextensive with the description in the deed, while under the latter the title will only be coextensive with the actual, visible and continued occupancy. (*Gildehaus v. Whiting*, 39 Kas. 711; *Roots v. Beck*, 109 Ind. 472.)

If the entry upon the land by Starkey was actual, and the holding of the possession was notorious and exclusive from 1873, when the railroad company acquired the legal title, it would amount to a disseizin, which would give title at the end of the statutory period. It is immaterial what may have been his right or claim of right to the land, and what may have been his motive, if he entered upon the land and held a hostile possession as against the owner of the legal title. (*Fitzgerald v. Brewster*, 47 N. W. Rep. 475.) It is true that Starkey did not reside on the land until 1879, but it is not necessary that a person should reside upon real estate in order that he may be in actual possession of the same. If it is subjected to the dominion of the claimant, manifested in some

appropriate manner, adapted to its character, con-
*2. Residence, when not essential.* dition, and locality, by which the party proclaims
to the public that he asserts an exclusive control
and ownership of the land, a residence upon it is not essen-
tial. (*Gilmore v. Norton,* 10 Kas. 491; *Barstow v. Newman,*
34 Cal. 91; *Webber v. Clarke,* 74 id. 11.)   In the early years
of the occupancy of the land by Starkey the country was
new, sparsely settled, and not much of it was in actual culti-
vation, but this land, like that surrounding it, was largely
used for hay and grazing purposes.   It was not inclosed with
a fence, but that is not essential to actual and adverse posses-
sion.   The use which he made of it was that to which it was
adapted, and the improvements which he placed thereon pro-
claimed to all that he was exercising rights of ownership
over the land inconsistent with the right of the real owner.
The improvements marked the boundaries of the land, and
left no question that he was claiming the entire quarter sec-
tion.   His occupancy and use were continuous from year to
year, so that he could not be regarded as an occasional tres-
passer, nor can his possession be regarded as hidden or in-
termittent.   For more than 15 years this possession was
maintained, without interference by the holder of the legal
title, or any attempt by him to dispute the rightfulness of
the possession of Starkey and Anderson.   During this long
*3. Evidence— adverse possession.* period of occupancy and possession valuable im-
provements were placed upon the land, but not
until August, 1889, did the owner challenge the
possession or the rightfulness of the claim and possession of
the occupant.   It was then too late; that possession had
ripened into a title.

As the evidence is undisputed, there is no necessity for a
retrial of the facts, and therefore the judgment of the court
will be reversed, and the cause remanded with the direction
to enter judgment in favor of the plaintiff in error.

All the Justices concurring.