## J. C. ARD v. C. H. PRATT.

ADVERSE POSSESSION—*Statute of Limitations—Right to Purchase Tax Title.* In 1873, M. obtained a patent from the United States for a tract of land, but never took actual possession of the same. A., claiming title, went into possession of the same land in 1873, but never paid any taxes thereon, and this possession, which was exclusive and adverse, continued for more than 15 years, and until the title of M. was extinguished by adverse possession. The taxes on the land for 1883 were not paid, and it was sold to a stranger for taxes, and a tax deed therefor was issued in 1887. In 1889, and after the statute of limitations had run against the patent title, M. purchased the outstanding tax title and subsequently conveyed the same to P., who brought an action to recover the land from A. *Held,* That, as M. owed no duty to A. to pay the taxes, and as their claims to the land were antagonistic, M. was not disqualified to purchase the outstanding title, nor was the grantee of M. precluded from relying upon the same as against the adverse possession and claim of A.

*Error from Allen District Court.*

EJECTMENT. Judgment for plaintiff, *Pratt.* The defendant, *Ard,* brings the case here. The opinion herein, filed June 9, 1894, states the material facts.

*Oscar Foust & Son,* for plaintiff in error.

*C. E. Benton,* for defendant in error; *A. H. Campbell,* of counsel.

The opinion of the court was delivered by

JOHNSTON, J.: On November 15, 1889, C. H. Pratt brought an action against J. C. Ard to recover possession of the south-

east quarter of the northeast quarter, and the southwest quarter of the northeast quarter, and the southeast quarter of the northwest quarter of section 2, township 26, range 20, in Allen county, Kansas. Other lands were described in the petition of the plaintiff below, but a disclaimer having been filed as to them, they are not in controversy in this proceeding. A judgment for the lands in controversy was recovered by Pratt, and it is now contended by plaintiff in error that, upon the undisputed testimony, he was entitled at least to the southeast quarter of the northeast quarter of the section; and further, that Pratt was not entitled to more than an undivided one-third interest in the remainder of the land in controversy. In support of his contention, Pratt introduced in evidence a patent from the United States to the Missouri, Kansas & Texas Railway Company, dated November 3, 1873, which included the southeast quarter of the northeast quarter of the section, and also a patent to the same company, dated April 2, 1877, which included the remaining 80 acres of the tract in controversy. There were also introduced in evidence three tax deeds conveying all of the lands in controversy, each of which was dated November 23, 1887, to Eugene S. Crook; a quitclaim deed from Crook to James H. Hill, dated January 16, 1889; and a like transfer from Hill to the Missouri, Kansas & Texas Railway Company, dated May 3, 1889; and a deed from the railway company to Pratt, dated May 21, 1889.

Soon after this last conveyance, and on November 15, 1889, Pratt instituted this action to recover the land from Ard, who was then in possession. On the part of Ard, testimony was introduced to the effect that one David Ard, about the year 1860, settled upon the land in question, together with 40 acres adjoining the same, with a view of obtaining a title from the United States. In 1863, David Ard died, and left surviving him Mary Ard, his widow, who claimed the land until 1865, when she sold her interest to James Ard, who, in 1869, made some improvements by plowing and planting hedgerows around a portion of the same. In 1873, he broke or plowed about 12 acres of the land, and again planted out hedgerows

on some of the exterior lines of the land. In October, 1879, James Ard transferred the land by a conveyance, which was not recorded, to J. C. Ard, the plaintiff in error, who went into the possession of the land, and has made some valuable improvements thereon, and continued in the possession of the same until the commencement of this action.

Ard bases his right to the land solely upon what is claimed to be adverse possession of the same, but he concedes that the possession was not of sufficient duration to get title to more than 40 acres of the land. The title of the United States in 80 acres of the tract did not pass until 1877, and it is admitted that until after that time no right could be obtained against anyone by possession of any character. The remaining 40 acres in controversy was patented to the railway company in 1873, more than 15 years before Pratt acquired any interest in the land, and before the bringing of this action. It is therefore contended that the possession of Ard, and those under whom he held, was such as to give him a title to this 40-acre tract by the statute of limitation.

There is much in the testimony which tends to sustain the claim of adverse possession from 1873. It was used in connection with other land, and upon the whole tract, which consisted of 160 acres, hedgerows were planted around the exterior lines, hedges were planted and fences built along a portion of these lines. Some of the land was broken up, and a part of it used as a meadow. Those who were in possession were seeking to obtain a title under the laws of the United States, and from the time the patent was issued they were claiming and holding the land in hostility to the rights of the patentee and those holding under it. It is true that those in possession failed to pay any taxes upon the land, a circumstance which weakens their claim, and still there is considerable in the testimony tending to sustain the claim of adverse possession, and which, we think, would be sufficient under recent authorities to give title at the end of the statutory period. (*Anderson v. Burnham*, 52 Kas. 454; *Guinn v. Spillman*, 52 id. 496.) In this view, the possession of Ard

would extinguish the patent title on November 3, 1888, a considerable time before Pratt acquired title to the land. Pratt, however, does not base his right to the land upon the patent title alone. He also claims under an independent outstanding title, resulting from a sale of the land for the taxes of 1883, which were not paid by anyone. Ard was then in the actual possession of the land, claiming to be the owner, and in the enjoyment of all the rents and benefits of the land. Under the sale, which was made in 1884, a tax deed, which appears to be regular and valid, was executed on November 23, 1887, conveying the land to Eugene S. Crook. Crook, as we have seen, conveyed the same to James H. Hill, and Hill in turn conveyed it to the railway company, on June 19, 1889.

It thus appears that the railway company purchased this outstanding tax title after its patent title had been extinguished by the adverse possession of those who occupied the land. The tax proceedings appear to be regular, and in fact they are unquestioned. It can hardly be urged that the purchase of the tax title by the railway company in 1889, after its patent title had been extinguished, operated as a mere payment of the taxes. No fiduciary relation existed between Ard and the company, and it owed him no duty which would disqualify the company from purchasing an outstanding title in the hands of a stranger. He occupied a hostile position, and was in fact endeavoring to defeat and destroy the title which the company had previously obtained. It may be said that the company owed a duty to the public to pay the taxes of 1883, but as the public has received the taxes imposed, as well as all the costs and expenses of collecting the same, public policy has been fully preserved, and no reason is seen why it may not acquire a title from the owner of the tax title. We think, under the facts of the case, that the company was not disqualified to purchase the outstanding title, nor precluded from relying upon the same as against the claim of the adverse occupant. In *Seaver v. Cobb*, 98 Ill. 200, this

*Adverse possession—statute of limitations—right to purchase tax title.*

subject was under consideration, and it was held that the failure of a person to pay taxes on his land would not preclude him from purchasing an outstanding tax title. It was said :

"Can it be that a person, by mistake or accident, failing to pay taxes on his farm, and it is purchased by another who acquires a deed, is precluded by public policy or any rule of law from receiving a conveyance from the purchaser or his assignee? Must such a title remain outstanding, beyond the power of the former owner to remove or extinguish it? Does the law impose such penalties and disabilities for such accidents, mistakes, or even for gross inattention or neglect? The law is intended to be reasonable and just in all of its requirements, but such a rule would be harsh in the extreme and palpably unjust." See, also, *Blackwood v. Van Vleit,* 30 Mich. 118; *Insurance Co. v. Bulte,* 45 id. 120; and Cooley on Taxation, 2d ed., 506.

It was conclusively shown that Ard had no title to the remaining 80 acres of the land, but he insists that, a vague statement alleged to have been made by Pratt, to the effect that he only owned a one-third interest in the land, prevented the rendition of a judgment for the whole of it. This statement, if made, was after the action was brought, and we think it is insufficient to overthrow the finding and judgment of the court. The legal title was clearly shown by competent testimony to be in Pratt, and it is immaterial to the plaintiff in error what arrangements he may have with other parties with reference to interests in the land. If any others have interests in the land, they have placed or allowed the full legal title to remain in Pratt, and they are not now making any claim.

Some objections are made to the testimony and instructions, which have been examined, but in them we find no good reason for complaint, nor are any of the reasons which are urged for reversal deemed sufficient to disturb the judgment that was rendered. It will therefore be affirmed.

All the Justices concurring.