JOHN SCHRIMPCHER *et al.* v. JOHN S. STOCKTON *et al.*

**No. 10320.**

INDIAN LANDS—*after restriction on alienation removed, title by prescription may be acquired in.* After restrictions on the alienation of lands patented to incompetent Wyandotte Indians were removed by the treaty of 1867, title thereto might be gained by occupancy under claim of ownership; and where, at the time the treaty took effect, the defendants were in the actual possession of such lands, under void deeds from an incompetent Indian, and continued without interruption to hold such possession, openly, adversely, and under claim of title, until 1891, *held*, that the Statute of Limitations is a complete bar to an action brought by the heirs of the incompetent Indian to recover the land.

Error from Wyandotte Court of Common Pleas. Hon. T. P. Anderson, Judge. Opinion filed December 11, 1897. *Affirmed.*

*J. M. Mason*, for plaintiffs in error.

*C. S. McLane*, for defendants in error.

ALLEN, J. This was an action of ejectment brought by John Schrimpcher and more than forty others, as plaintiffs, claiming to be heirs of Carey Rodgers, deceased, a Wyandotte Indian, against John S. Stockton and ten other defendants. The plaintiff sought to re-

cover two tracts of land allotted to Wyandotte Indians in accordance with the treaty of 1855. One tract was conveyed by patent to Margaret C. Cherloe. She was designated as a person belonging to the competent class, and the conveyance was absolute, with full power of disposition by herself and her heirs. The other was to Carey Rodgers, an incompetent Indian, the patent containing this condition:

"That the said tract shall never be sold or conveyed by the grantee, or his heirs, without the consent of the Secretary of the Interior for the time being; and with the further and express condition, as specified in the fourth article of the treaty with the Wyandottes, of the 31st January, 1855, that the lands are not to be sold or alienated for a period of five years."

Answers were filed by various defendants denying the plaintiff's title and pleading the Statute of Limitations. The case was tried by the court, and judgment was rendered for the defendants upon special findings of fact, from which we extract so much as seems necessary to an understanding of the questions decisive of the case.

On the first of June, 1859, a patent for allotment No. 42, containing sixty-four acres of land in Wyandotte County, was issued to Margaret C. Cherloe. On the first of September, 1859, a patent for allotment No. 278, containing 57.35 acres adjoining the first-mentioned tract, was issued to Carey Rodgers. Margaret C. Cherloe died prior to the thirty-first day of August, 1863, leaving Carey Rodgers, her grandson, as her only heir. On the last-mentioned date, Carey Rodgers executed and delivered to Jesse Cooper and Mary E. Stockton a deed for the tract patented to his grandmother, reciting a consideration of $128. On the fifteenth of November, 1864, he executed and delivered to the same parties another deed, for his own allotment, reciting a consideration therefor of

§228.   Carey Rodgers died intestate between the first and ninth days of December, 1867. He was then twenty-one years of age.   The sole surviving next of kin of Carey Rodgers, following the male line, are Frank Whitetree, Brackett N. Whitetree, Mary Nichols, Silas Smith, jr., and Mary D. Williams, who are among the parties named as plaintiffs.   Immediately after the execution of the deeds from Carey Rodgers to Cooper and Stockton, the grantees took possession of all the land described in the deeds; and they and their grantees have held actual, open, exclusive, and adverse possession of all said lands ever since the date of said deeds, and have paid all the taxes thereon, except in the years 1891 and 1892, when there was a kind of occupancy of a part of the land by persons claiming under the plaintiffs.

Under the law in force at that time, the five plaintiffs named became the heirs of Carey Rodgers.   Compiled Laws, 1862, ch. 80, §§ 18 and 19.   By the provisions of the treaty of 1855 with the Wyandottes, they were to be divided into two classes, designated as competents and incompetents.   The lands allotted to those reported as competent to manage their affairs were to be patented to them unconditionally, in fee simple; but as to those not competent, it was provided:

"The patents shall contain an express condition that the lands are not to be sold or alienated for a period of five years, and not then without the express consent of the President of the United States first being obtained, and the said patents may be withheld by the Commissioner of Indian Affairs so long as in his judgment their being so withheld may be made to operate beneficially upon the character and conduct of the individuals entitled to them.   None of the lands to be thus assigned and patented to the Wyandottes shall be subject to taxation for a period of five years from and after the organization of the state govern-

ment over the territory where they reside, and those of the incompetent classes shall not be aliened or leased for a longer period than two years, and shall be exempt from levy, sale or forfeiture, until otherwise provided by state legislation with the assent of Congress." Article 4 of Treaty, 10 U. S. Statutes at Large, 1161.

In a subsequent treaty, concluded February 23, 1867, proclaimed on the fourteenth of October, 1868, it was provided as follows :

"Article 15. All restrictions upon the sale of lands assigned and patented to 'incompetent' Wyandottes under the fourth article of the treaty of one thousand eight hundred and fifty-five, shall be removed after the ratification of this treaty, but no sale of lands heretofore assigned to orphans or incompetents shall be made under decree of any court, or otherwise, for or on account of any claim, judgment, execution, or order, or for taxes until voluntarily sold by the patentee, or his, or her heirs, with the approval of the Secretary of the Interior ; and, whereas, many sales of land belonging to this class have heretofore been made contrary to the spirit and intent of the treaty of one thousand eight hundred and fifty-five, it is agreed that a thorough examination and report shall be made, under direction of the Secretary of the Interior, in order to ascertain the facts relating to all such cases, and upon a full examination of such report, and hearing of the parties interested, the said Secretary may confirm the said sales, or require an additional amount to be paid, or declare such sales entirely void as the very right of the several cases may require." 15 U. S. Statutes at Large, 517.

It is clear that the deed to his own allotment, made by Carey Rodgers in 1864, was absolutely void. It is also clear that the deed made by him in 1863, to his grandmother's allotment, was at least voidable, for he was then a minor, if it was not absolutely void because of his belonging to those classed as incompetent, under the treaty.

It does not seem necessary to enter into any nice consideration of the effect of either of the conveyances executed by Carey Rodgers while he was yet a minor. We shall assume that they conveyed no title. It appears, however, that the grantees took and retained possession under them, claiming title in fee simple. By the treaty of 1867, ratified and proclaimed in 1868, all restrictions on voluntary alienation of lands patented to incompetents were removed. As to conveyances already attempted, the Secretary of the Interior was authorized to make inquiries, and confirm, modify, or set aside, the sales. It does not appear in this case that any action was ever taken by him with reference to this land. The state of the case, then, at the time this treaty took effect, was, that the lands belonged to the heirs of Carey Rodgers and were alienable by them. The defendants were in possession, claiming a title which they did not have. This possession remained undisturbed for more than twenty years. We perceive no reason why the Statute of Limitations does not bar this action. The heirs of Carey Rodgers could have maintained an action to recover the land at any time after his death. So long as the land remained inalienable, no title could be gained by adverse possession. *Sheldon v. Donohue,* 40 Kan. 346 ; *McGannon v. Straightlege,* 32 id. 524 ; *Frederick v. Gray,* 12 id. 518. But when the lands became taxable, and subject to unrestricted alienation by Rodgers's heirs, the owners were under the same necessity of exercising vigilance in asserting their rights that rested on other owners. The lands thereafter had no different legal status from those patented to white persons. The fact that those in possession claimed under void deeds, does not militate against the title gained by occupancy. Fifteen years open, exclusive, adverse possession, under claim of title, bars an action

by the rightful owner, even though based on no written instrument. *Anderson v. Burnham,* 52 Kan. 454; *Gilmore v. Norton,* 10 id. 491; *Guinn v. Spillman,* 52 id. 496.

The findings with reference to the absence of the defendants from the State are insufficient to bring the case within the exception of the statute.

The judgment is affirmed.