Frederick E. Schwartz, appellant, v. Anders Anderson, appellee.

Filed December 18, 1912.    No. 16,814.

1. **Adverse Possession:** Evidence. It is shown by the uncontradicted evidence that defendant has been in the open, continuous and exclusive possession of the land in question for more than 10 years prior to the commencement of an action in ejectment, claiming to be the owner thereof, and that during said time plaintiff occupied and owned adjoining land and recognized defendant's possession as such owner, and that during all of said time plaintiff might have instituted an action contesting defendant's right. *Held,* That the statute of limitations had run in favor of defendant, and that ejectment could not be maintained.

2. ————: ————. The fact, if true, that the land involved in litigation was not correctly described in defendant's muniments of title would not prevent the running of the statute of limitations in his behalf, as between him and another claimant, there being no question of the identity of the particular land occupied and claimed by him.

3. **Appeal:** Verdict: Evidence. "If a verdict is the only one justifiable by the evidence, instructions to the jury will not be examined." *Kielbeck v. Chicago, B. & Q. R. Co.,* 70 Neb. 571.

Appeal from the district court for Dundy county: Robert C. Orr, Judge. *Affirmed.*

*W. S. Morlan,* for appellant.

*Lambe & Butler,* contra.

Reese, C. J.

This is an action in ejectment. Plaintiff alleged in his amended petition that he was the owner and entitled to

Schwartz v. Anderson.

the immediate possession of "lot numbered six (6), in section numbered six (6), in township number one (1) north, range thirty-six (36) W. of the 6th P. M., in Dundy county, Nebraska, being also known as the southwest quarter (S. W. $\frac{1}{4}$) of the northwest quarter (N. W. $\frac{1}{4}$), of said section number six (6), and said defendant ever since the 3d day of June, 1908, has unlawfully kept and still keeps the plaintiff out of the possession thereof." The second cause of action is for rents and profits, and need not be here set out. The defendant answered: (1) A general denial of all unadmitted allegations of the petitions. (2) It is alleged that neither plaintiff nor his grantors, etc., were seized or possessed of any part of said southwest quarter of the northwest quarter of said section 6, within 10 years immediately preceding the commencement of the suit; that the plaintiff's cause of action, if any he ever had, accrued on the 25th day of April, 1898, which was more than 10 years prior to the commencement of this action. (3) That on or about the 22d day of March, 1893, defendant entered into possession of the premises, to wit, the said southwest quarter of the northwest quarter of said section 6, under claim and color of title, and has since retained the actual, adverse and exclusive possession of the premises, at all times claiming to be the owner thereof; that plaintiff with knowledge of the facts has since the 25th day of April, 1898, up to the time of the commencement of the action stood by and permitted defendant to cultivate and make permanent improvements upon said land, and that he is estopped thereby to make any claim therefor; that the boundary line between plaintiff and defendant has been agreed upon between them and recognized by both for more than 10 years immediately preceding the commencement of the suit, and that during all of said time plaintiff has not claimed, asserted or demanded any right, title or interest in said premises, and during all of which time defendant has occupied the same, claimed and in good faith improved it, being, and believing himself to be, the owner thereof. The reply was a general

denial. A jury trial was had, when the jury returned a general verdict in favor of defendant. A special finding was submitted and answer returned by the jury, the question and answer being as follows: "Does the jury find that from the 30th day of August, 1897, when the plaintiff received a receiver's receipt for lot numbered six (6), to the present time the defendant Anders Anderson, or some one in his behalf, has been in open, peaceable, exclusive and adverse possession of the land in dispute during all of said time, claiming to own the same? Answer: Yes." A motion for a new trial was filed, overruled, and judgment was rendered on the verdict in favor of defendant. Plaintiff appeals.

The case is a peculiar one, and, were it not for the plea of the statute of limitations, would be difficult of decision under the evidence submitted. There is no question of boundaries involved, nor as to the identity of the exact premises in dispute, for both petition and answer refer to them as the southwest quarter of the northwest quarter of section 6, township number 1 north, range number 36 west of the sixth P. M. Neither is there any dispute as to defendant's exclusive possession thereof since 1893. At some time, probably May 3, 1884, a duplicate receiver's receipt was issued to George W. Tompkins for the sum of $200.70 in full payment for "lot 8, sec. 31, tp. 2 north, and lot 1, 2, 3, 4 and 5 quarter of section No. 6, in township No. 1 north of range No. 36 west, containing 160 acres." On the 6th day of May, 1884, Tompkins deeded it to J. M. Tolman (Tallman). On the 21st of April, 1888, a patent was issued to Tompkins. March 12, 1885, Tallman deeded to William J. Wilson. November 7, 1891, Wilson conveyed to Mads Anderson. March 22, 1893, the sheriff of Dundy county, by virtue of an execution sale against Mads Anderson, conveyed to defendant. In all those transfers the property is described as lots. Immediately after the execution of the sheriff's deed defendant went into possession of the land in dispute as his own and has held the possession ever since. Lot "6" is not referred to in any of

those conveyances by that number. On the 3d day of June, 1908, the United States authorities issued to plaintiff what is styled "Timber culture certificate No. 1466," by which lots 6 and 7 in the same township and range were conveyed to him. At the close of the instrument this language is used: "This patent is issued in lieu of one bearing the same numbers, dated April 25, 1898, which has been canceled because of an error in the description." There is in this record a conveyance by quitclaim deed from plaintiff to the United States, releasing all claim to lot numbered 5, in the same township and range, and which bears date May 16, 1908. There is nothing in or about this deed giving any explanation as to why it was made, nor do we find anything in the evidence upon that subject. The inference would probably be that the original patent issued to plaintiff April 25, 1898, conveyed lot "5," and an error was thought to be discovered. This error, if one existed, was probably caused by the numbering of the original survey. The fact remains that now both plaintiff and defendant are claiming to be the owners of the tract of land occupied by the defendant, plaintiff claiming to own it by virtue of his patent of 1908, supplanting that of 1898, and defendant claiming it by and through the location of Tompkins in 1884, and the sheriff's deed to himself in 1893, and under which he is, and has been since said date, in the exclusive possession.

There is some evidence that the numbers of the lots appearing in the public records in the local land office, as well as in the office of commissioner of public lands and buildings, have been changed by erasure and substituting the numbers corresponding with plaintiff's claim, but it seems to be unknown when or by whom such changes were made. The evidence as to the original numbering of the lots is not convincing one way or the other, and we find ourselves unable to solve the question from the evidence. This uncertainty is, no doubt, largely owing to the long lapse of time since the survey and the report thereof. We are impressed with the belief that when Tompkins made

his entry in 1884, and when defendant purchased the land in 1893, as well as when plaintiff made his entry in 1898, it was understood and believed that the number of the lot was as is now claimed by defendant. This number is also shown by the survey made in 1892 by the county surveyor, as shown by the record of that office of 1891-1892. The evidence shows without dispute the possession of defendant; that for a long period of time, longer than the statutory period of limitation, plaintiff has occupied adjacent land and knew of defendant's claim, at one time objecting to the fence of defendant being over the line and from which it was removed to on or near the true line. It is true, as contended by plaintiff, that the statute of limitations does not run against the general government; but, even if true that the title remained in the United States until the year 1898, there was yet more than 10 years intervening between that time and the commencement of this action, and by which the statutory bar was complete. This being true, we are persuaded that the verdict and judgment were the only ones that could have been rightfully rendered. If we are correct in this, the question of errors in the instructions does not require attention. *Jeffres v. Cashman*, 42 Neb. 594; *Henry v. Dussell*, 71 Neb. 691; *Kielbeck v. Chicago, B. & Q. R. Co.*, 70 Neb. 571; *Booknau v. Clark*, 58 Neb. 610.

As we have heretofore suggested, there is no question of boundaries, nor of any mistake in the particular land which defendant occupied and claimed to own. He occupied and openly claimed the land with the knowledge of plaintiff during the statutory period. The contention is that the land itself is not described by the correct numbers. Each party knew just what defendant claimed. His occupancy was exclusive, continuous. Eliminating the question of a mutual mistake, if there were one, his right could not be successfully assailed. But, if there were a mistake as to the correct description, his title would be good. *Baty v. Elrod*, 66 Neb. 735, 739, and cases cited. In that case the contention related to boundary lines, but it

is not perceived that any different rule should be applied in a case like the one now under consideration. If the defendant had exclusive possession for the 10 years, claiming it as owner, his title would be perfect as against the whole world, except the sovereign, and those under disability. "It is the visible and adverse possession, with an intention to possess, that constitutes its adverse character." *Fitzgerald v. Brewster*, 31 Neb. 51.

The judgment of the district court is

AFFIRMED.

SEDGWICK and ROSE, JJ., dissent.