MATTHEW McKEIGHAN, PLAINTIFF IN ERROR, V. PITT H. HOPKINS, DEFENDANT IN ERROR.

1. **Real property:** COLOR OF TITLE. A tax certificate is not sufficient to constitute color of title to real estate.

2. **Judicial sale:** CONFIRMATION. An order confirming a sale of real estate, where there is no fraud or collusion, cannot be attacked collaterally.

3. **Mortgage foreclosure:** SALE TO APPRAISER: FRAUD: REDEMPTION. Where a defendant acquired title to certain real estate by the foreclosure of a mortgage, and it appeared that the premises had been appraised at a sum greatly below their value, and were sold to one of the appraisers, who conveyed to the holder of the mortgage, *Held,* That as the legal title had passed to the purchaser, ejectment would not lie against him; but as there was testimony tending to show collusion amounting to fraud between the appraiser and actual purchaser, the

plaintiff, upon payment of all costs, would have leave to amend his petition to redeem the premises, upon the payment to the defendant of all moneys and taxes paid by him on said land, together with interest thereon.

ERROR to the district court for Johnson county. Tried below before WEAVER, J.

*T. Appelget & Son,* for plaintiff in error.

Appraisement illegal. *Sessions v. Irwin,* 8 Neb., 7. *Rosenfield v. Chada,* 10 Id., 422. Sale was void. Comp. Stat., 594. *Maple v. Nelson,* 31 Iowa, 322. *Banks v. Bales,* 16 Ind., 423. Adverse possession. 3 Wash. on Real Prop., 119. Tyler Ejectment, 861, 875, 890. Purchaser chargeable with notice. *Hubbell v. Broadwell,* 8 Ohio, 128. Ejectment lies. *Harrison v. Ropp,* 2 Blackf., 1. *Smith v. Cocknell,* 6 Wall., 758. *Maguire v. Smith,* 4 Blackf., 228.

*Davidson & Easterday,* for defendant in error.

Adverse possession. Tyler Ejectment, 921. *Jackson v. Norton,* 18 Johns., 355. *Jackson v. Leek,* 12 Wend., 165. Confirmation cannot be attacked. *Phillips v. Dawley,* 1 Neb., 322. *Day v. Thompson,* 11 Id., 128. Rorer on Judicial Sales, 58. No appraisement was necessary. Comp. Stat., 627.

MAXWELL, J.

This is an action of ejectment brought by the plaintiff in the district court of Johnson county against the defendant to recover the possession of the south-west fractional quarter of section 6, town 4, range 12, in Johnson county. The answer is a denial of the plaintiff's title. On the trial of the cause judgment was rendered in favor of the defendant, and the action dismissed.

The questions to be determined are: *First*, Had the defendant title by adverse possession, and if so, to what portion of said land? *Second*, Did he acquire title under proceedings for the foreclosure of a mortgage executed upon said real estate by the plaintiff and assigned to the defendant?

It appears from the testimony that in April, 1870, the defendant took possession of the land in question under a tax certificate dated March 1, 1869. The character of the possession is stated by the defendant as follows:

Q. After the purchase of the tax certificate and mortgage did you take possession of the land in controversy?

A. I did, as I did of all lands I bought in any way; I did not move upon the land at the time, but took possession as I did of all other lands I owned in the county that I was not occupying. I managed the grass and other things, paid the taxes, etc.

Q. When did you thus go into possession of the land?

A. It was in the fore part of April, 1870. This assignment was made when I was in Iowa. I came out soon after. The assignment was made about the first of April.

On the 30th day of May, 1871, the defendant obtained a treasurer's deed. The deed was excluded for defects in its execution. This action was commenced on the 6th day of April, 1881. The defendant, therefore, was not in possession under color of title for ten years before the commencement of the action, unless the tax certificates constituted such color.

Washburn in defining the phrase says: "The term 'color of title' means a deed or survey of the land placed upon the record of land titles, whereby notice is given to the true owner and all the world that the occupant claims the title." 3 Wash., R. P. (4th Ed.), 154. If the title under which a party relying upon possession claims, and originally entered, be so defective as to convey no title, yet the adverse possession will not be affected by the defects in

such title. *Jackson v. Todd*, 2 Caines, 183. *Jackson v. Sharp*, 9 Johns., 162. *Jackson v. Waters*, 12 Id., 365. *LaFrombois v. Jackson*, 8 Cow., 589. That is, a grantee who occupies real estate as owner, under a deed which fails to convey the title for such length of time that the bar of the statute is complete, will have a perfect title by adverse possession. *Snell v. Iowa Homestead Co.*, 13 N. W. R., 848. But the instrument, whatever its name, must purport to convey the title.

But a tax certificate does not purport to convey title. It is merely evidence of the purchase of the land, and two years from the date of the sale are given by the statute to the land-owner to redeem, and until that time the purchaser has no interest in the land itself except his lien for taxes. But after the expiration of the time for redemption, and upon notice to the owner, the purchaser is entitled to a deed. This deed may be sufficient for color, even if too defective to convey title. But in the case at bar the testimony fails to show that the defendant was in possession of the premises in controversy for ten years prior to the commencement of the action under color of title. There is testimony tending to show that he has been in actual possession of a portion of the premises for more than ten years, but what particular portion does not appear. The defense of adverse possession therefore is not established.

*Second.* It appears from the testimony that in April, 1866, the plaintiff executed a mortgage upon the lands in question to one Perry Lawson to secure the sum of $150. Payments were made upon the debt thus secured at various times, reducing it below $100. In November, 1869, Lawson sold and assigned the mortgage to the defendant. In March, 1877, the defendant commenced an action in the district court of Johnson county to foreclose the mortgage, service being had upon McKeighan by publication.

In April, 1877, a decree of foreclosure for the sum of $96.14 was rendered in said court. An order of sale was

issued on this decree and delivered to the sheriff, who called George A. Phillips and J. W. Buffum to appraise the property. The following is a copy of the appraisement, omitting the formal part: "Do upon actual view thereof appraise the property hereinafter described at its real money value as the property of Matthew McKeighan, taken by virtue of an order of sale issued out of the district court of the First Judicial district of Nebraska, in and for the county of Johnson, wherein Pitt Hopkins is plaintiff, and the said Matthew McKeighan was defendant, the south-west fractional quarter of section No. 6, in township No. 4 north, of range 12 east, in Johnson county, Nebraska, valued at the sum of eight hundred and seventy-two and fifteen-one-hundredths dollars. Taxes as per county treasurer's certificate, $22.15. Tax title of Pitt Hopkins. The interest of Matthew McKeighan, defendant, we value at ten dollars."

The land was sold to Joseph W. Buffum for the sum of $156. The sale was reported to the court and confirmed, and a deed ordered and made to the purchaser. Buffum and wife thereupon conveyed to the defendant. The attorney for the defendant contends that even if the appraisement was illegal—in fact no appraisement at all—that the order of confirmation cured that defect, and that such order cannot be attacked collaterally. He also contends that no appraisement was necessary in sales under a decree of foreclosure.

Sec. 491$a$ (Comp. St., page 593,) of the Code, provides that: "Whenever, hereafter, execution shall be levied upon any lands and tenements, the officer levying the same shall call an inquest of two disinterested freeholders, who shall be residents of the county where the lands taken on execution are situated, and administer to them an oath impartially to appraise the interest of the person, or persons, or corporation against whom the execution is levied, in the property so levied upon, and such officer, together with

said freeholders, shall appraise said interest at its real value in money; and such appraisement shall be signed by such officer and said freeholders, respectively."

Sec. 491*b* provides: "That for the purpose of the appraisement mentioned in the last preceding section, the officer and the freeholders therein named shall deduct from the real value of the lands and tenements levied upon, the amount of all liens and incumbrances for taxes or otherwise, prior to the lien of the judgment under which execution is levied, and to be determined as hereinafter provided, and which liens and incumbrances shall be specifically enumerated, and the sum thereafter remaining shall be the real value of the interest therein of the person, or persons, or corporation against whom or which the execution was issued."

Sec. 491*c* provides that: "It shall be the duty of the county clerk, the clerk of the district court, and the county treasurer of the county wherein such levy is made, for the purpose of ascertaining the amount of liens and incumbrances upon the lands and tenements so levied upon, on application of the sheriff, in writing, holding such execution, to certify to said sheriff under their respective hands and seals the amount and character of all liens existing against the lands and tenements levied upon, and which are prior to the lien of such levy, as the said liens appear of record in their respective offices. For which certificate and the necessary search therefor said officer shall receive a fee of two dollars ($2) each, to be paid by the plaintiff in the execution, and taxed as increased costs in the action in which the judgment on which execution was issued was rendered."

Sec. 491*d* provides that: "The officer holding such appraisement shall forthwith deposit a copy thereof, including his application to the officers enumerated in section 3 of this act, and their official certificates as in said section provided, in the office of the clerk of the court from which

McKeighan v. Hopkins.

such execution issued, and shall immediately advertise and sell said real estate, lands, and tenements, agreeable to the provisions of this act; but in no case shall he sell any such real estate, lands or tenements for less than two-thirds the appraised value of the interest of the person, persons, or corporation, against whom the execution was issued, unless it appear from the appraisement under this act that the liens and incumbrances thereon equal or exceed its real value in money."

Sec. 495 provides that: "In all cases where real estate may hereafter be levied upon, by virtue of an execution or order of sale, and shall have been appraised, and twice advertised and offered for sale, and shall remain unsold for want of bidders, it shall be the duty of the officer to cause a new appraisement of such real estate to be made, and successive executions or orders of sale may issue at any time in vacation, after the return of the officer 'not sold for want of bidders,' at the request of the plaintiff or his attorney."

Sec. 451 provides that: "Real property may be conveyed by master commissioners as hereinafter provided: *First*, When by an order or judgment in an action or proceeding, a party is ordered to convey such property to another, and he shall neglect or refuse to comply with such order or judgment. *Second*, When specific real property is required to be sold under an order or judgment of the court."

Sec. 452 provides that: "A sheriff may act as a master commissioner under the second subdivision of the preceding section. Sales made under the same shall conform in all respects to the law regulating sales of land upon execution."

These provisions apply to all sales of real estate under the process of the court, whether upon execution or order of sale.

If the question of the validity of a sale in a case of this

kind was before this court for the first time, the writer would have no hesitation in holding the sale invalid. But from the earliest reported cases in this court to the present time it has been held that an order confirming a sale cannot be collaterally attacked. *Phillips v. Dawley*, 1 Neb., 320. *Crowell v. Johnson*, 2 Id., 146. *State Bank v. Green*, 8 Id., 297. *Berkley v. Lamb*, 8 Id., 392. *Day v. Thompson*, 11 Id., 123. This being the construction adopted by this court, it has become a rule under which rights and titles have been acquired, and if changed it should be done by the legislature and not by the court. This objection therefore must be overruled.

It is objected that Buffum, one of the appraisers, purchased the land at the sale. From an inspection of the record, this appears to be true, as the name, J. W. Buffum, is the same in each case. The land was sold to him as Joseph W. Buffum, but was conveyed to the defendant as " J. W. Buffum." As the legal title to the premises passed by the proceedings in foreclosure to the defendant, the plaintiff cannot maintain an action of ejectment, and to that extent the judgment of the court below will be affirmed. But as the appraisement was for a sum greatly below the value of the premises, and as there is testimony from which collusion amounting to fraud may be inferred between one of the appraisers at least and the defendant, the plaintiff will have leave, upon the payment of all costs, to amend his petition by filing a bill to redeem, and tendering to the defendant all moneys and taxes paid by him with interest thereon.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.