JOHN FITZGERALD V. DENNIS BREWSTER.

[FILED DECEMBER 23, 1890.]

Limitation of Actions: REAL ESTATE. An action for the recovery of the title or possession of lands, tenements, or hereditaments can only be brought within ten years after the cause of such action shall have accrued. (Civil Code, sec. 6.)

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Marquett, Deweese & Hall,* for plaintiff in error, cited, contending that possession, to be adverse, must be under

claim of right: *Gatling v. Lane,* 17 Neb., 79; *Jackson v. Johnson,* 5 Cow. [N. Y.], 92; *Magee v. Magee,* 37 Miss., 152; Angell, Lim., 410–11; *Gay v. Mitchell,* 35 Ga., 141; *Brown v. Gay,* 3 Me., 126; *McNamara v. Seaton,* 82 Ill., 498; *Skinner v. Crawford,* 54 Ia., 119; Wood, Lim., 513; *Colvin v. R. V. Land Ass'n,* 23 Neb., 80; *Ewing v. Burnet,* 11 Pet. [U. S.], 41; *McCracken v. San Francisco,* 16 Cal., 635.

*H. H. Blodgett, contra,* cited: *Horbach v. Miller,* 4 Neb., 47; *Haywood v. Thomas,* 17 Id., 241; *Tex. v. Pflug,* 24 Id., 669; *Levy v. Yerga,* 25 Id., 766.

COBB, CH. J.

This is an error case to the district court of Lancaster county. The action was ejectment, brought by plaintiff to recover lots 1 and 2 in the Lincoln Land Company's subdivision of lots 11 and 12, of block 84, city of Lincoln, Lancaster county, Nebraska—plaintiff claiming that he was the owner in fee simple of said property. Defendant pleads the statute of limitations, and claims the lots by reason of ten years' adverse possession.

Upon the second trial there was a verdict and judgment for the defendant. A new trial being denied him, the plaintiff brings the cause to this court on error, and although several errors are assigned in the petition in error, but two are relied on, or presented in the brief and argument of the counsel, to-wit: That the verdict and judgment are not sustained by the evidence, and that the court erred in its opinion and judgment overruling the plaintiff's motion for a new or third trial. These two assignments will necessarily be considered together.

The defendant, being sworn as a witness in his own behalf, testified that he lived on the lots in question and that he occupied the whole of lots 1 and 2; that he built his house and lived there in September, 1875; that in 1876 he

filled up the lots, which were low and partly covered by water, and fenced one of the lots and about half of the other one, and set out trees on the lots, and cultivated the whole of both lots; that the house which he built on said place is 12 by 18 feet, one story in height; that he had a barn, coal house, and other outhouses on the lots; that he had lived there and cultivated the lots ever since 1875; that his family consisted of himself and one boy since 1874; that he moved on said property with the intention of making it his home; that he had always called the premises his own; the improvements were put up without the consent of the plaintiff; that he put them up on his own account; that he did not know who the lots belonged to when he went there; that he found out that fall "in October, when the surveyors came on."

On cross-examination, he stated, Henry Kelkenberg lived near the lots when he first went down there; that he told Kelkenberg when he first went down that the lots were his. I here copy the continuation of defendant's testimony, being the part specially relied on by plaintiff in error.

Q. What sort of title did you have to these lots when you told Kelkenberg that you owned them?

A. By living on them ten years I gained peaceable possession.

Q. Had you lived on them ten years when you told him so?

A. Not ten ——. I got ten years' peaceable possession.

Q. Who told you that ten years would give you peaceable possession?

A. Mr. Blodgett.

Q. When did he tell you that?

A. In 1875.

Q. You consulted him?

A. Yes; he went down there and showed me the ground.

Q. Did Blodgett tell you they would be yours?

A. Yes; he said, "Go on and settle and live there ten years, and they will be yours."

Q. 163. You say you told Mr. Kelkenberg, two years ago that you owned these lots?

A. Of course I owned them.

Q. When did you first tell Mr. Kelkenberg that you owned them?

A. Well, it is about four years ago.

Q. 165. That is the first time you ever told him?

A. Yes, sir.

Q. 166. Is he the first party you ever told you owned these lots?

A. He is the only person I ever told.

Q. How long ago?

A. I can't tell you.

Q. Four years ago?

A. Yes, six or eight years ago.

Q. 169. You didn't say much about owning these lots, did you, until after you had been in possession ten years?

A. No.

Q. It takes ten years to make a title?

A. Yes, it takes ten years.

Q. You didn't say much about it until after you had made your title good?

A. I wanted to have a sure thing of it.

Q. So you just let the time run along, and didn't say much to anybody until after you had been there ten years?

A. No.

Q. Blodgett told you to keep still?

A. No, sir; anybody's judgment would know better. Do you think I am a fool?

\*     \*     \*     \*     \*     \*     \*     \*

Q. 185. You had possession of these lots ten years in 1888?

A. Yes, sir.

Q. 186. How long had you been there before you com-

menced claiming the lots as yours—two, or three, or four years?

A. Oh, longer than that.

Here is defendant's own testimony that he had been occupying said lots more than four years before he commenced claiming them as his own.

Q. 187 (which is a continuation of the same question). Five years?

A. Yes, ten of them.

A. (To Q. 193). He (meaning Blodgett) told me if I lived there ten years, I would gain peaceable possession.

Q. 195. Did you live there eight or ten years before you claimed the lots as yours?

A. No.

Q. What made you tell them you owned the lots before that?

A. I didn't tell them before that.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

Q. 199. Did you tell people these were your lots before you had lived there ten years?

A. I claimed them as my own.

Q. 201. You had not been there ten years at that time?

A. Yes, sir.

Q. You had been there ten years. Was this before you told people these lots were yours?

A. Yes; I had filled it up, and made it.

Q. Did you not tell them that before?

A. No; I claimed it as my own.

There was other evidence that the defendant went onto the lots in either 1875 or 1876, built a house thereon and lived there ever since. It appears from the whole evidence that the defendant went onto the lots without color of title, and, as he says, without knowing, or in fact pretending to know who owned them, but with the intention of acquiring the title by adverse possession. He knew, or was advised, that ten years' adverse possession would give him the title.

The position of the plaintiff, as I understand it, is, that in order to make the defendant's title adverse, and to set the ten years' limitation in motion, he must have believed, or at least have claimed, that he had the exclusive title at the time of his entry, and for the entire ten years of occupation, and that his evidence not only fails to establish and sustain these facts, but on the contrary negatives them. The point thus presented is one of no little difficulty. Had the defendant rested his case upon his acts alone, and left the court and jury to place that construction upon the fact and circumstances of his entry and ten years of occupation of the lots, which the principles and presumptions of the law would warrant, and they had come to the same conclusion which they did, the verdict and judgment would, without doubt, under the decision of this court in the case of *Gatling v. Lane,* 17 Neb., 80, and cases there cited, be upheld. But the question remains, what, if any effect, shall be given to the evidence of the defendant negativing a claim on his part to be the owner at that time, and establishing the *quo animo* with which he entered upon the lots to be, to acquire a title by virtue of the statute of limitations.

Having made a somewhat thorough and exhaustive examination of the authorities, I find it utterly impossible to reconcile them upon the point thus raised. The earlier cases generally hold that to make a holding adverse, the premises must have been entered upon, or at least held for the entire statutory period under color of title, or claim of right. But there are early cases which hold that notorious and exclusive possession without right (or claim of right) constitutes a disseizin. (See *Melvin v. Proprietors, etc.,* 5 Met., 15; *Towle v. Ayer,* 8 N. H., 57; *Poignard v. Smith,* 8 Pick [Mass.], 272.) And it would logically follow that when the real owner is disseized by the actual entry of a disseizor the statute will begin to run. I find that nowhere it is held that honesty of purpose in one who enters upon the land of another is necessary to a disseizin.

In the case of *Yetzer v. Thoman*, 17 O. St., 130, which was a suit involving a disputed boundary between two adjoining land-owners, the trial court charged the jury that "An entry of one man on the land of another is an ouster of the legal possession or not, according to the intention with which it is done. By the law the intention guides the entry and fixes its character," etc. In reversing the judgment in this case the supreme court, in the opinion, says : "We are of the opinion that this charge is erroneous. We think that under our statute of limitations, if a party establish in himself, or in connection with those under whom he claims, an actual, notorious, continuous, and exclusive possession of land for a period of twenty-one years, he thereby, except as to persons under disability, acquires a title to the land; and this, irrespective of any question of motive or mistake." The opinion also quotes that of the supreme court of errors of Connecticut, in the case of *French v. Pearce*, 8 Conn., 439, as follows: "The possession alone, and the qualities immediately attached to it, are regarded. * * * If he intends a wrongful disseizin, his actual possession for fifteen years gives him a title, or if he occupies what he believes to be his own, a similar possession gives him a title. Into the recesses of his mind, his motives or purposes, his guilt or innocence, no inquiry is made. It is for this obvious reason that it is the visible and adverse possession, with an intention to possess, that constitutes its adverse character, and not the remote views or belief of the possessor."

In our own cases, I think without an exception, the party invoking the protection of the statute, entered and held the premises under color and claim of title, and yet the writers of the several opinions have in some instances found it more convenient to dispose of the cases upon the holding alone, rather than upon such holding under color and claim of title based upon papers void upon their face; and thus followed the cases of *Yetzer v. Thoman, supra,*

and *Campau v. Dubois*, 39 Mich., 274, or rather the sylla-
bus of the latter case. Our decisions are in great part
based upon the modern view of statutes of limitations, as
statutes of repose, rather than of presumption.

In the case at bar the entry of the defendant with what-
ever motive, he not acknowledging the title of the plaint-
iff, amounted to an ouster and disseizin of the plaintiff
within the rule of the above cases. His occupation of the
premises for the full period of ten years was actual, no-
torious, adverse, and exclusive, for all of which time the
plaintiff failed to assert his title or claim to the property.
To hold otherwise than that this occupancy of the defend-
ant ripened into a perfect title, would be, as I conceive, to
depart from the letter as well as the spirit of the decisions
of this court from that of *Horbach v. Miller*, 4 Neb., 31,
to the latest case, and thus break down a well established
rule of property.

The judgment of the district court is

AFFIRMED.

THE other judges concur.