ANDERSON, Administrator, Appellant, *v.* MACE et al., Respondents.

(No. 7,359.)

(Submitted March 28, 1935. Decided April 15, 1935.)

[45 Pac. (2d) 771.]

*Mr. S. J. Rigney,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Marshall Murray* and *Messrs. Ford & Smith,* for Respondents, submitted a brief; *Mr. Russell Smith* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This action was instituted in the district court of Glacier county by P. B. Anderson, as administrator of the estate of Elizabeth Devenere, deceased, against Robert B. Mace and wife,

for the collection of rentals for the alleged use of premises described as lots 7 and 8 of block 34, in the town of Cut Bank. The period for which rentals were sought to be recovered began January 6, 1923, and ended with the month of May, 1933.

It appears that Elizabeth Devenere owned and occupied the property at the time of her death in 1918. Thereafter one Taft was appointed administrator and qualified. Subsequently he left the state, and in 1923 one Gaines was appointed. He served a short time, and died. Some four years later the plaintiff Anderson was appointed, and qualified; he was the acting administrator at the time of the institution of this action.

Elizabeth Devenere left a minor heir in the person of Jennie Devenere, who was eleven years of age at the time of the death of her mother. She was the only heir of the estate; she removed from the state about 1919, and as far as the record shows has not resided in Montana since.

For several years previous to January 6, 1923, one J. C. Dennis, son-in-law of defendant Mace, occupied the premises as a tenant. He paid at least a part of his rent to some representative of the estate, generally to Mr. Rigney, the attorney. The taxes levied and assessed against the property for the years 1919 to 1922, inclusive, were unpaid and delinquent. The property was sold to the county at tax sale. On January 5 or 6, 1923, the defendant Mace paid to the county treasurer all of the accrued delinquent taxes, under the provisions of section 2207, Revised Codes 1921, and took an assignment in accordance with that section. On January 6, immediately after Mace had taken the assignment, he proceeded to notify his daughter and son-in-law, Mr. and Mrs. Dennis, that they should not pay any further rent to the estate or to Mr. Rigney but should pay it to him, as he had tax papers on the place; he showed them the papers. Mace immediately moved into the house with the Dennis family, and remained there with them until about February 1, 1923, when Dennis and his family moved out and Mace took exclusive possession. He lived in the house and occupied the premises until some time in the

year 1928, when he personally vacated and removed from the town of Cut Bank. From that time until the fall of 1932 Mace claims to have been exercising dominion over the premises, and that he caused the property to be rented through an agent, and collected some rent. At the time of the appointment of plaintiff as administrator, in 1932, one Lundeen was occupying the premises. Plaintiff demanded rent and possession. Lundeen vacated, and one William Ferres, son-in-law of defendant, moved in without the consent of plaintiff. Plaintiff made demand on him for possession, but Ferres refused to vacate. An ejectment action was then started against him, but before it came to trial, Ferres moved out. The evidence discloses that the house was left locked after Ferres vacated, and that plaintiff, as administrator, took possession thereof.

Mace paid all taxes as they accrued, down to and including the taxes for 1932. The last half of the 1932 taxes was paid on May 29, 1933, just before the institution of this action by the administrator. The property was at all times assessed to Elizabeth Devenere; apparently, however, the notices went to Mace. In any event, the record shows that Mace paid the taxes.

Some improvements in the way of water installation and other things were made by Mace during the period of his claim to the property. He claimed the property from January 5, 1923, down to the time of the trial. He never attempted to obtain a tax deed.

In order to understand the issues and to find a basis for the action of the court in the matter, we must look to the pleadings. The complaint is one for rent, accrued and unpaid; it contains a demand for judgment for $1,375, delinquent rental, $300 damages, and costs of suit. The allegations are to the effect that plaintiff is the administrator and, as such, entitled to the ownership and possession of the property; that defendants by themselves, for a period of six years beginning January 6, 1923, and since by tenants, have occupied and used the premises as a dwelling place for themselves or others to whom they leased or subleased, and that they had the benefit

of the occupation and use for that time; that the period of use and occupation continued from about January 1, 1923, until the date of the filing of the complaint; that the use and occupation by the defendants was at all times wrongful, unlawful and without any authority from the estate or the heir, or any person in authority; that the reasonable value of the use was $15 a month; that the defendants had paid certain taxes—approximately $500—and that plaintiff was willing that the same be applied on the rent.

Answer was filed by the defendants, admitting the formal allegations of the complaint, and specifically admitting the occupation of the premises from January 6, 1923, until the beginning of the action. The answer specifically admitted, also, that the use and occupation by defendants was without the consent of the estate, or the heir, or anyone in authority. It affirmatively alleged that defendants had been in the actual, exclusive, open, notorious, continuous and adverse possession, under color of title and claim of right, of the property for more than ten years immediately preceding the commencement of the action, and that Mace had paid all of the taxes levied and assessed during that time. It admitted the reasonable rental value as alleged for a portion of the time, but asserted that for the rest thereof the value was a lesser amount. The statute of limitations was pleaded, and a cross-complaint interposed. Therein defendants alleged the substantial facts hereinbefore set forth; reasserted the claim of adverse possession; specifically averred that for more than ten years preceding the commencement of the action Mace had paid all of the taxes and had been in the exclusive and adverse possession of the property; alleged that on May 27, 1933, plaintiff had instituted court action against William Ferres and wife, tenants, seeking to recover possession; that Ferres delivered possession to Mace as landlord, and that Mace thereupon closed the dwelling and locked it; that on or about May 31, 1933, plaintiff wrongfully and unlawfully, and without the consent of defendants, forced the lock and took possession of the property and had since held it without their consent, and that the

possession of plaintiff was unlawful and without authority. A demurrer was filed and overruled, and later an amended answer and cross-complaint was filed, more specifically setting forth the claims of defendants, and demanding judgment against plaintiff as administrator and against him personally in the sum of $70 for the wrongful use and occupation, and for rent at $15 a month. A demurrer was filed to the amended answer and cross-complaint and in due time overruled. A reply was filed by plaintiff, denying many of the allegations of the answer and cross-complaint, and setting forth plaintiff's version of the facts of the controversy. It recited the death of Elizabeth Devenere, the appointment of the plaintiff as administrator, the minority of the heir, Jennie Devenere, and her absence from the state. It specifically alleged that defendants went into and obtained possession of the property as mere trespassers, without any right or authority of law, and without any right or color of title; it admitted that Mace had paid some of the taxes on the property, but denied on information that all of the taxes were paid.

The cause came to trial before the court without a jury. It is not necessary to set forth in detail the evidence at length by reason of the fact that we have attempted to give the substance of it in the foregoing statement. In his testimony Mace asserted that he had been holding the property at all times during ten years adversely and as his own. He admitted, however, that his claim was based on the tax payments. He testified that he told everyone that he had gotten the property under a tax title, and that he supposed that it was good. A transcript of the books of the county treasurer was introduced, showing all the payments of taxes over the ten-year period and that all of them were made by Mace.

After the trial of the cause the court took the matter under advisement and directed the filing of briefs. Plaintiff filed an application to amend his pleadings, particularly his complaint, in certain respects, in order, as he alleged, to make the pleadings conform to the evidence. Objections were filed by defendants' attorneys. The record, however, does not show

that the court ever ruled upon this application to amend.
Thereafter the court made and filed what was denominated
"Findings of fact, conclusions of law and Judgment." Therein
it was directed that judgment be entered against Anderson
as administrator and personally. No other or further judg-
ment appears in the record. The appeal is from the "judg-
ment."

Findings of fact Nos. 3 and 4 are to the effect that the
defendants personally occupied the premises for a period of
six years, beginning January 6, 1923, and thereafter by tenants
until May, 1933; and that such use and occupation were at all
times wrongful, unlawful and without authority from the
estate, or the heir of the estate, or any person with any right
or authority as administrator, or otherwise. It is to be noted
that these findings are identical with the allegations of plain-
tiff's pleadings. The court also found that the defendants had
made certain improvements upon the property, had paid all
of the taxes during the period, and had otherwise complied with
all of the requirements of law necessary to establish a right
by adverse possession. The conclusions of law were in ac-
cordance with the findings.

Plaintiff, as appellant here, has made and urges many assign-
ments of error. We do not, however, see the pertinency of all
of them. It seems obvious that the allegations of the plaintiff
found in the pleadings, as well as the evidence adduced at the
trial, were made the basis of the court's findings with relation
to the wrongful possession by defendant Mace. Respondents
bear heavily upon this feature of the case. Appellant argued
orally that the allegations with relation to the possession were
not binding, by reason of the fact that they were made in
furtherance of a cause of action for the recovery of rents,
rather than in an action involving a right by adverse posses-
sion. It is the general rule that allegations, statements
or admissions contained in a pleading are conclusive as against
the pleader, and are admissible as against the party making
them in the litigation as proof of the facts which they admit,
upon a subsequent trial of the case or upon the trial of an-

other action. This rule is found in 49 C. J. 122; and the foregoing language is followed by the statement, "and that the facts which are admitted by the pleadings are to be taken as true for the purpose of the action," etc. (*Weatherman* v. *Reid*, 62 Mont. 522, 205 Pac. 251.)

The contention of plaintiff is not tenable in view of the fact that after the first allegations on this subject were tendered by plaintiff in his complaint, an answer and cross-complaint was filed by defendants, specifically alleging the matter of adverse possession and the claim of right thereunder, and with that element in the case, plaintiff included almost identical allegations in his reply. Certainly, the allegations in the reply must be held as being directly responsive to the claim of adverse possession theretofore asserted by defendants.

Apparently, while the court received testimony on the subject, it relied substantially upon the allegations, for the wording of the findings very closely follows plaintiff's own allegations. In view of that fact and of the further fact that findings of a court will not be disturbed where there is evidence to support them, we do not feel that it is necessary for us to enter into a lengthy discussion of the evidence on this point. The court's findings as to the character and manner of defendants' possession must therefore be sustained.

Under our statutes, particularly in view of the provisions of section 9024, Revised Codes 1921, adverse possession can in no case be considered as established unless the party asserting it shall have paid all taxes levied and assessed during the period involved. Plaintiff asserts that the payment of taxes made by defendants was not in furtherance of adverse possession, but by virtue of rights under the tax assignment. It must be borne in mind that our statutes do not give a purchaser at a tax sale, or his assignee, a right of possession under the certificate of sale. No title vests in the purchaser. This court has said: "Title does not vest in the individual purchaser or in the county until the execution and delivery of the deed. Prior to that he has merely an inchoate or inceptive title; or to put it in another way, the holder of the certificate

of sale has a lien which can ripen into title only after the lapse of a definite time and upon compliance with the statutory requisites." (*State ex rel. City of Billings* v. *Osten,* 91 Mont. 76, 5 Pac. (2d) 562.) Mace had no right of possession under his assigned tax certificate, even though he may have thought that he had such right. The payments of taxes made by him were made at a time when he was claiming the property as his own adversely to all the world. He may have been mistaken about the reasons, but the fact of his having hoisted his flag over the property is evident from the record. This principle is recognized in a New Mexico case. (*Chambers* v. *Bessent,* 17 N. M. 487, 134 Pac. 237.) As we view it, the character of his possession is not so important as the actual fact that he did hold the possession. In 2 Tiffany on Real Property, second edition, page 1923, it is said: "The emphasis just made upon the character of the wrongful possession has the unfortunate effect of obscuring the theory on which, as above stated, these statutes appear properly to operate, that is, that, like other statutes of limitation, they bar the remedy of the person rightly entitled not by reason of any merit in the wrongdoer, but by reason of the demerit of the person who, having a remedy, fails to exercise it within the time named in the statute."

In the discussion of a water right case this court quoted with approval from 27 Ruling Case Law, 1291, section 203, the following statement: "Before a use can be adverse in the sense of this rule, it must be an invasion of the right of the party against whom it is set up of such a character as to afford him ground of action, that is to say, it is the fact that the claimant has been exposed to an action which the opposite party has neglected to bring, that is seized on as the ground for presuming a grant in favor of long possession and enjoyment, the theory being that this adverse state of things would not have been submitted to if there had been no grant." (*Boehler* v. *Boyer,* 72 Mont. 472, 234 Pac. 1086; see, also, *Bullerdick* v. *Hermsmeyer,* 32 Mont. 541, 81 Pac. 334; *Ferguson* v. *Standley,* 89 Mont. 489, 300 Pac. 245; *Le Vasseur* v. *Roullman,* 93 Mont.

552, 20 Pac. (2d) 250; *State ex rel. City of Billings* v. *Osten,* supra.)

The fact remains that the defendants did pay all of the taxes assessed against the property during the period of their adverse holding. The earlier taxes were paid to the county treasurer under the provisions of section 2207, Revised Codes 1921. It is difficult to understand how it can be said that the transaction under that section was not a payment, within the meaning of section 9024, supra. The provision is: "At any time after any parcel of land has been bid in by the county as a purchaser thereof for taxes as provided in section 2191, the same not having been redeemed, the county treasurer shall assign all the right of the county therein acquired at such sale to any person who shall pay the amount for which the same was bid in," etc.

In this case the defendant Mace did pay ten years' current taxes, being all of the taxes assessed against the property during the period of his incumbency without regard to the payment of the delinquencies in the beginning. The records of the county treasurer show that he paid the 1923 taxes on November 17 of that year; that he paid all subsequent taxes as they accrued; and that his last payment of the 1932 taxes was made on May 29, 1933, before this action was instituted; so that the only relevancy that can attach to his payment of the delinquent taxes at the beginning had to do with the manner of the initiation of his alleged adverse holding. As we have held, that is not important or controlling. The controlling fact is that all of the taxes legally levied and assessed in accordance with section 9024, supra, were paid by Mace.

The fact that the property was at all times assessed in the name of the original or record owner is not important. Section 2002, Revised Codes 1921, provides that "no mistake in the name of the owner of real property renders the assessment thereof invalid." Section 2036, Id., declares that no assessment or collection of taxes is illegal on account of informality. (See *County of Musselshell* v. *Morris Dev. Co.,* 92 Mont. 201, 11 Pac. (2d) 774.) It has been held that if the person claim-

ing adverse possession has actually paid the taxes, it is immaterial to whom they were assessed; he will nevertheless be entitled to the benefit of the statute. (See 2 C. J. 204.)

The only other assignment of error necessary for discussion here has to do with the rejected testimony of the alleged disability of the minor heir, the fact of the minority and the absence of the heir. The force of this objection is lost in the light of the fact that in this state two actions exist for the recovery of the real property left by a decedent. One of these actions resides in the representative of the estate, the administrator here, and the other in the heirs. This matter was discussed at length in the case of *Lamont* v. *Vinger*, 61 Mont. 530, 202 Pac. 769, where it was held that the statute barring the administrator did not bar the heir. We fail to see how the disability of the heir can be urged in defense of the administrator. The statutes giving disabilities are to be strictly construed. (37 C. J. 985.) This action is not an adjudication of the rights of the heir; it cannot be urged as such. Defendants in their brief admit that the heir is not foreclosed by this action.

We have examined all of the assignments of error and the authorities urged in support thereof. In view of the allegations contained in the pleadings, the evidence in the case, and the law applicable thereto, we are of the opinion that the appeal should be dismissed, and it is so ordered.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied June 19, 1935.