### TOMLINSON et al. v. TYLER.

No. 30506. Nov. 24, 1942.

*131 P. 2d 98.*

I. H. Cox and Ramsey, Martin & Logan, all of Tulsa, for plaintiffs in error.

Allan R. Shaw and Richard K. Harris, both of Bartlesville, for defendant in error.

CORN, V. C. J. Plaintiff brought this action to quiet title to land in Nowata county. The petition stated two causes of action against two different tracts. However, the first cause of action dealt with land described as N.E.¼ of S.W.¼ of section 31, township 28, range 15 east, which is the tract against which the judgment herein appealed from was rendered.

Plaintiff alleged he was the legal and equitable owner and in possession under the following chain of title. The land had been sold for taxes in 1936, and September 1, 1938, the county treasurer assigned the tax sale certificate to one Courtney. Courtney then sold the certificate to plaintiff, who agreed to pay Courtney a commission when he got a tax deed thereon. Pursuant to demand, February 2, 1939, the county executed the tax deed to Courtney. February 28, 1939, Courtney and wife conveyed by warranty deed to plaintiff. It should be mentioned here that the evidence disclosed plaintiff had bought Courtney's interest before the tax deed was issued. Plaintiff then alleged defendants were claiming some right, title, or interest in the land, and asked to have title quieted in himself.

By answer and cross-petition defendants deraigned their title from the heirs of the original Indian allottee to one J. E. Tomlinson, defendant's father; then by inheritance and purchase to one Estes, holding as trustee for defendant. In 1924 Estes conveyed to Annie Pierson, who gave a note and mortgage thereon. In 1929 Annie Pierson delivered possession to Estes, who became the mortgagee in possession. To protect the Estes mortgage from taxes the Piersons had failed to pay, defendant in 1929 bought in a county deed, but did not declare a forfeiture or claim as owner against the Piersons except as mortgagee. The Piersons failed to pay the note, and later gave defendant a quitclaim deed to satisfy the mortgage and avoid foreclosure.

Defendant alleged that about December 1, 1938, plaintiff forcibly and wrongfully took possession of the premises, removed improvements therefrom, of a value in excess of the amount due under the tax lien, and converted same for his own benefit. By reason of this, defendant asked that plaintiff be enjoined from claiming any right in the property.

By cross-petition defendants asked judgment quieting title in themselves; $500 for the value of the improvements

removed from the land, and a decree canceling and setting aside the tax deed.

Defendants also asked judgment decreeing the tax deed to be void, by reason of the fact that it was paid for with money belonging to defendants, and asked that the deed to Courtney be canceled.

The trial court heard the evidence and rendered judgment for plaintiff, from which judgment defendants have appealed. The numerous assignments of error, upon which defendants rely as grounds for reversal of this judgment, are presented under six propositions. However, in view of the situation presented, we are of the opinion it is unnecessary to consider any of these other than defendants' last contention, that this tax deed is void because plaintiff took forcible possession of the property, wrongfully removed improvements thereon of a value in excess of the amount of the tax lien, and by such conversion realized more than the amount necessary to reimburse himself for the amount due under his tax lien, and that thereby this lien was discharged and plaintiff could not rightfully obtain a legal tax title to the land.

The evidence in this respect showed that one Whit Stull, who worked on plaintiff's ranch, was the party who sold at least a portion of the improvements. The trial court stated this was of no avail because, in his judgment, the evidence failed to show that plaintiff had anything to do with the sale. The evidence in this connection was as follows:

"Q. Where do you live, Whit? A. Blue Ribbon Ranch. Q. Whose ranch is that? A. D. M. Tyler's. Q. How long have you been there? A. About five years. Q. What is your business out there? A. Oh, just looking after the ranch, running it. Q. You work for Tyler then? A. No, sir, I don't work for Tyler. Q. Just work for the ranch. Is that right? A. I work for Mr. Dancer. Q. Who is Mr. Dancer? A. He is the foreman for Mr. Tyler. Q. You and Bill Dancer then both work for Tyler. Is that right? A. Yes, sir. Q. Do you remember selling this house and barn here to Mrs. Oden a few years ago? A. Yes, sir. Q. What did you sell it to her for? A. $35. Q. You got the money, didn't you? A. She sent me a post office money order. Q. That is the same post office money order that is in evidence here, isn't it? A. Yes, sir. Q. You weren't doing that for yourself, were you? A. No, sir."

Thereafter, on cross-examination, Stull testified:

"Q. What did you do with the money? A. I sent it to Mr. Tyler. Gave to Mr. Dancer. Q. To send to Mr. Tyler? A. Yes, sir."

In the face of this positive testimony of plaintiff's own employee, neither plaintiff nor his foreman, Dancer, took the stand in an effort to deny that Tyler actually received this money. Moreover, there was competent evidence offered by the defendants to show the value of the improvements on this land.

One witness, Mrs. Hansen, testified she had lived on the land in 1938 (which was about the time the tax certificate was issued) and that the improvements consisted of a small house, barn, and chicken house; that they were in fair condition; that she left the property, and when she returned in the spring of 1939 there was nothing there.

Five other witnesses testified concerning the value of the improvements. Mrs. Stella Oden, who purchased the house and barn from Whit Stull, testified they were worth $100. The other witnesses who testified as to the value of the improvements on this land all fixed the value of these improvements at from $500 to $600.

The plaintiff made no effort to offer any evidence to establish that these improvements were of less value than contended by defendants, but depended entirely upon the theory that the evidence failed to show plaintiff took possession, or that he sold and removed the improvements or had anything to do with what happened to the improvements or that he profited in any manner from the transactions.

The undisputed testimony clearly contradicts this argument. It is clear

that when Stull, plaintiff's employee, sold part of the improvements to Stella Oden, plaintiff received the money from the sale. This one instance was sufficient to establish that he knew the circumstances of the transaction, and that he profited thereby.

A carbon copy of the purported tax sale certificate was introduced in evidence at the trial, but it did not show endorsement of payment of any subsequent taxes. However, the evidence does show that, at the time Courtney received the assignment of this certificate upon payment of the 1935 taxes, amounting to $11.30, he likewise paid delinquent taxes for prior years, and also for 1936 and 1937. The total amount of taxes paid, including the 1935 taxes, amounted to $117.65.

The uncontradicted evidence clearly shows that, long before he acquired his tax deed, plaintiff went into possession of the premises and removed improvements from the land. This amounted to a conversion of these improvements and plaintiff is properly chargeable with the value of such improvements, this value having been established by competent evidence which was, in no manner, controverted.

The gist of defendants' contention is that the lien of the certificate was extinguished by plaintiff's unlawful entry into possession of the premises, and conversion and sale of the improvements for his own benefit.

No cases are called to our attention in which this court has had a like situation before it for consideration. However, in Harbeson Lmbr. Co. v. Geneva Mill Co. (1934) 116 Fla. 342, 156 So. 710, a somewhat similar situation was presented. In that case plaintiff had brought suit to foreclose tax liens. Defendants pleaded that plaintiff had wrongfully entered, cut and removed valuable timber, and had received therefrom sufficient value to reimburse the tax certificate holder for the amount spent in purchasing the certificates, and that for this reason plaintiff's lien should be considered as discharged, or foreclosure allowed only for such an amount as was determined to be due after the value of the timber had been deducted from the amount of the tax certificates. In passing upon this question the court said:

" . . . The complainant invokes the aid of equitable processes to enforce its tax liens, and it must do equity as to matters that are connected with, and directly affect the liens which the complainant seeks to subordinate to its first lien. Complainant had no absolute right to acquire title to the property and had no more right to impair the value of the lands constituting the subject upon which all the liens exist, than had other lienholders; and if complainant has taken timber from the land, the value of such timber should in equity be credited to the amount due on the complainant's lien."

The first and third paragraphs of the syllabus state:

"1. Purchaser of tax sale certificate on realty, as first lienholder, has no right to impair value of the property."

"3. Judgment lienholder's answer, in suit to foreclose tax lien, alleging that tax lienholder unlawfully cut timber on land, *held* to state equitable defense, since tax lienholder, having no right to impair value of property, value of timber wrongfully cut should in equity be credited on amount due on tax lien."

In the early case of Uhl v. Small, 54 Kan. 651, 39 P. 178, the Supreme Court of that state considered essentially the same question, and held in paragraph 2 of the syllabus:

"Though a party in possession of lands under an invalid tax deed is not chargeable with rents or profits until repayment to him of the amount of taxes he has paid, with interest, etc., allowed by law, if he removes from the lands and converts to his own use valuable buildings which were on the lands when the taxes were levied, the value of such buildings will be a valid counterclaim against his lien for taxes; and in determining the amount of taxes, etc., which the successful party in an action of ejectment to recover the property shall be required to pay before being let into possession, the court should deduct

therefrom the value of the buildings so removed by the parties holding under the tax deed."

To this same effect see Longworth v. Johnson et al., 66 Kan. 717, 71 P. 259; Chicago Trust Co. et al. v. Knabb (1940) 142 Fla. 767, 196 So. 200; Carter v. Shawler et al. (1931) 241 Ky. 78, 43 S. W. 2d 343.

It is interesting to note that in the Shawler Case, supra, the Kentucky court held that the tax purchaser, although he had possession of the premises under a writ of possession, was liable for the value of crops on the premises, besides a reasonable rent.

A tax sale certificate is only evidence which entitles the holder to a deed, upon the happening of certain conditions, and it does not entitle the owner of such certificate to possession of the premises covered thereby. Hastings v. Montgomery, 142 Okla. 47, 285 P. 89.

Upon this theory plaintiff's wrongful entry into possession and forcible removal of the improvements on this land cannot be excused. This being true, we see no reason why the value of the property converted should not be held to be properly credited against the amount of plaintiff's lien, evidenced by the amount of the certificate issued to Courtney. Although the certificate showed only the amount of $11.30, the evidence did show that $117.65 in taxes had actually been paid by Courtney. This amount, however, was far less than the actual value of the property converted, as established by uncontroverted evidence. From this, then, it must necessarily follow that the lien of plaintiff's tax certificate was discharged when he converted the improvements on this land, since the value of these improvements was far in excess of the amount of his tax lien.

We are of the opinion that the lien of this tax certificate was discharged by reason of the fact that the value of the improvements removed from the land amounted to more than the value of the tax lien.

The judgment is reversed, with directions to the trial court to proceed in accordance with the views expressed herein.

WELCH, C. J., and OSBORN, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., absent.