## KENWORTHY v. MURPHY.

No. 33860.  Jan. 23, 1951.

Rehearing Denied Feb. 20, 1951.
Application for Leave to File Second
Petition for Rehearing Denied
March 13, 1951.

*228 P. 2d 382.*

Leon J. York, Stillwater, and M. A. Cox, Chandler, for plaintiff in error.

P. D. Erwin, Chandler, for defendant in error.

JOHNSON, J. The parties here occupied reverse relative positions in the trial court, and hereafter they will be referred to as they there appeared.

Plaintiff brought this action to quiet title to the N.W. 1/4 of S.E. 1/4 section twenty (20), twp. sixteen north (16N), range 6 east (6E), in Lincoln county, Oklahoma, basing his claim upon color of title, and adverse possession and payment of taxes for more than 20 years. Other parties were defendants, but all defaulted except Mary S. Reynolds, who filed a disclaimer, and I. E. Kenworthy, who filed an answer claiming the right to possession and title in himself, and denying the allegations of plaintiff. The cause was tried to the court, resulting in a judgment for plaintiff, from which defendant appeals.

It is admitted that the record title to the land in question is in the defendant. The facts upon which plaintiff seeks to sustain his contentions are substantially as follows: On November 7, 1921, county treasurer, O. L. Rea, of Lincoln county, Oklahoma, sold the land in question to plaintiff, John Murphy, the highest bidder, for the delinquent taxes for the year 1920 for the sum of Eighteen and 35/100 Dollars and issued to him a "County Treasurer's Certificate of Tax Sale." He took possession immediately and paid the taxes each year thereafter, having each succeeding annual tax payment endorsed on said certificate as provided by law, 68 O. S. 1941 §433e. Upon taking possession under the tax sale certificate as aforesaid, he fenced the land and rented part of it for pasture and part for farming for a period of more than 20 years. Plaintiff never made application to the county treasurer for a tax deed, which could have been done anytime after the expiration of two years, upon giving the record owner 60 days' notice as required by statute. Until this was done the defendant had the right of redemption, and plaintiff had only a lien for all amounts paid plus legal rate of interest. Webster v. Skinner, 200 Okla. 553, 198 P. 2d 213. But plaintiff contends that this tax certificate was color of title, and that through it and his adverse possession for more than 15 years he has acquired title by prescription.

A certificate of purchase issued on a tax sale does not constitute color of title. Harrell v. Enterprise Savings Bank, 183 Ill. 538, 56 N. E. 63; McKeighan v. Hopkins, 14 Neb. 361, 15

234 in the margin

N. W. 711; Salt Lake Investment Co. v. Fox, 32 Utah 301, 90 P. 564, 13 L. R. A. (N.S.) 627, 125 Am. St. Rep. 865. In the later case of Bozievich v. Slechta et al., 109 Utah 373, 166 P. 2d 239, the Utah court in referring to the rule announced in Salt Lake Investment Co. v. Fox, supra, said:

"In Salt Lake Investment Co. v. Fox, supra, this court held that a purchaser of a tax sale certificate did not hold the property adversely to the record owner because by the statute of this state the owner had a definite period of time within which to redeem and when the purchaser took possession of the property by virtue of a tax sale certificate it was 'in effect, an admission on his part that he held subject to the owner's right of redemption.'

"It will be noted that possession in the above case was taken by virtue of a tax sale certificate. Such a certificate does not purport to convey title to the land. The purchaser of a tax sale certificate knows that the legal owner has a certain definite period within which he may redeem from the sale and until such period has passed it is presumed that when such purchaser takes possession he takes it in subordination to the right of the owner and not adversely to him . . ."

But in Tennessee, a tax certificate describing the boundaries of the premises is color, Winter v. Hainer (Tenn.) 64 S. W. 44. And in Arkansas it is held that a certificate of purchase is color, since the statute makes the sale, and not the deed, the investiture of title so far as adverse possession is concerned, Worthen v. Fletcher, 64 Ark. 662, 42 S. W. 900. However, in Honeyman v. Andrews, 124 Okla. 18, 253 P. 489, we cited with approval Salt Lake Investment Co. v. Fox, supra, wherein we said that possession under a tax sale certificate is, during the period of redemption, an admission that the possession is subject to the owner's right of redemption, and is not adverse to the true owner. To the same effect was the holding in the case of Webster v. Skinner, supra.

We would emphasize the binding acts of plaintiff. Each year he not only paid the taxes, but had the amount thereof indorsed on the tax sale certificate thus increasing his lien in amount and at the same time prolonging or extending the time in which he could ask and secure a tax deed. If he had not done so his time in which to secure such tax deed would have expired. 68 O. S. 1941 §433e, supra. Thus while he states he was holding under a claim of ownership, he was each year by his voluntary act specifically and irrevocably preserving his status as a lienholder, and each year adding to the amount of his interest bearing lien. While so acting he should not be heard to say that he preferred to hold as owner or intended to hold as owner and not as a lienholder.

Plaintiff's right to so preserve his status as a lienholder cannot be denied. The fact that he did just that is fixed by statute, 68 O. S. 1941 §388, binding alike on plaintiff and defendant. No cited case upholds a right to so act and at the same time a right to claim to hold as an owner so as to obtain a title by adverse holding or prescription. The case of Anderson v. Mace, 99 Mont. 421, 45 P. 2d 771, does not so hold. It is not directly in point with a case where, as here, the certificate holder each year voluntarily preserved his status as a lienholder.

If a person should enter upon the land of another as a tenant and should each year do some specific voluntary act that would amount in law to an attornment so as to preserve his status as a tenant for a number of years, then surely he could not claim he had been holding in another capacity as owner or claimant of title. So it is here with the plaintiff who entered on this land as a lienholder, and each year thereafter preserved his status as a lienholder.

It was contended that defendant was required to tender the taxes.

This is a suit to quiet title based on possession for more than 15 years under a tax sale certifciate. The tender statute has no application under the facts in this case.

From what we have said, and after a careful examination of the entire record, we think it was reversible error to render judgment for plaintiff. The trial court is therefore directed to vacate the judgment in favor of plaintiff, and to take further proceedings consistent with the views herein expressed.

Defendant asked that he have judgment here for cost of the case-made. He will be entitled to such judgment on compliance with the rules of this court.

ARNOLD, C.J., LUTTRELL, V.C.J., and WELCH, CORN, GIBSON, and HALLEY, JJ., concur. DAVISON and O'NEAL, JJ., dissent.

DAVISON, J. (dissenting). I cannot agree with the opinion of the majority of the court in this case nor with the conclusion that the judgment of the lower court should be reversed. Consequently, I desire to express my views. The facts are not involved.

The defendant is the owner of the record title of the lands. In 1921, plaintiff purchased the same at the regular sale for delinquent taxes, and was issued a tax sale certificate. He owned adjoining lands. He took immediate possession, enclosed the lands with a fence and has occupied the same either individually or by tenant ever since, this suit to quiet title being filed by him April 6, 1945. During this occupancy he took the crops, the rents and the profits and claimed ownership of the property adverse and hostile to all the world and exercised every power and right of a true owner. Each year when he paid the taxes he had them endorsed on his tax certificate as required by statute.

The law of this state with reference to title by prescription is provided by 12 O. S. 1941 §93, par. 4, and 60 O. S. 1941 §333, the latter being as follows:

"Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, demoninated a title by prescription, which is sufficient against all."

Syllabus 1 in the majority opinion is a correct statement of law but is beside the point. Color of title has no effect upon the issues here because plaintiff was in actual occupancy of the entire premises. Very early the Court of Kansas (whence 12 O. S. 1941 §93, supra, came) used the following language in the case of Anderson v. Burnham, 52 Kan. 454, 34 P. 1056:

"It is the holding of the notorious and exclusive possession of the land in hostility to the rights of the owner which gives the title, and not any mere instrument or paper under which claim is made. Possession by any adverse occupant, which is actual, continuous, and exclusive, will give title when the bar of the statute becomes complete, although such possession is entirely destitute of color of title. The difference between title acquired by adverse occupancy under color of title and without such color is that under the former the color of title gives character to the possession, and gives rise to the presumption that the claimant intends the entry shall be coextensive with the description in the deed, while under the latter the title will only be coextensive with the actual, visible, and continued occupancy . . . It is immaterial what may have been his right or claim of right to the land, and what may have been his motive, if he entered upon the land and held a hostile possession as against the owner of the legal title. Fitzgerald v. Brewster (Neb.) 47 N. W. 475. It is true that Starkey did not reside on the land until 1879, but it is not necessary that a person should reside upon real estate in order that he may be in the actual possession of the same. If it is subjected to the dominion of the claimant, manifested in some appropriate manner, adapted to its character, condition, and locality, by which the party proclaims to the public

that he asserts an exclusive control and ownership of the land, a residence upon it is not essential."

Although no mention was made of the Kansas case, the same rule was in effect followed in the case of James v. Union Graded School Dist. No. 2, 201 Okla. 573, 207 P. 2d 241.

In 88 Am. St. Rep. 703, it is said:

"Unless expressly required by the statute, color of title is not necessary to the acquisition of title by adverse possession. All that is necessary to render possession of lands adverse and set the statute of limitations in operation, is that the claimant enter and take possession with the intention to hold the lands as his, to the exclusion of all others. But a title depending solely upon acts of adverse possession, and deriving no color from any source, does not extend beyond the land actually occupied. The right is commensurate with the use; the enjoyment is limited to that which has been actually enjoyed;" and many cases are cited in support thereof.

The U. S. Supreme Court, in the case of Probst v. Presbyterian Church, 129 U. S. 182, 32 L. Ed. 642, approved the following instruction as proper and reversed the lower court because the same was not given:

"That an uninterrupted occupancy of land by a person who has in fact *no title thereto,* for the period of ten years adversely to the true owner, operates to extinguish the title of the true owner thereto and vests the right to the premises absolutely in the occupier." (Italics mine.)

In Minnesota & M. Land & Improvement Co. v. Brasier, 18 Mont. 444, 45 P. 632, it was held:

"The fact that an adverse possession of land is not based on a paper title will not prevent the running of the statute of limitations in its favor."

The following statement in Washburn on Real Property, vol. 3 (5th Ed.) page 149, was quoted in the case of Goodman v. Nichols, 44 Kan. 22, 23 P. 957, and subsequently was approved by this court in the cases of McMann v. McMann, 123 Okla. 26, 252 P. 1093, and Stolfa v. Gaines et al., 140 Okla. 292, 283 P. 563:

" 'When the bar of the statute becomes complete, however destitute of the color of title such occupancy may have been under, to the extent that it was actual, visible, and continuous, a title by prescription arises in the adverse occupant. This title is in all respects equal to a conveyance in fee. The only distinction which can be recognized between title acquired under the statute of limitations by adverse occupancy, under claim and color of title, and without such claim or color, is that in the latter case title will only be coextensive with actual, visible, and continuous occupancy, while in the former color of title may, by construction, embrace lands only part of which was thus actually occupied.' "

Thus, since plaintiff actually occupied the property, claiming it as his own, exercising absolute dominion over it to the exclusion of all others including the record owner, color of title or lack of it did not change the rights of the parties. This case differs from those wherein a lienee has the right to possession to protect the property embraced in the lien because the holder of a tax certificate has no right to possession of the property. If he does take possession, he is a trespasser. See Tomlinson v. Tyler, 191 Okla. 518, 131 P. 2d 98; Webster v. Skinner, 200 Okla. 553, 198 P. 2d 213. Therefore, plaintiff in the instant case has without question met two of the three requirements for title by prescription, i. e.: occupancy which is hostile to that of the true owner. The only remaining requirement is that there must be a claim of ownership. Under the majority view, a tax certificate holder could never have a claim of title or be adverse to the true owner regardless of his intention. Such, I do not think is the law. Of course, the facts that plaintiff was the tax certificate holder and that he had the payment of subsequent taxes endorsed thereon were to be taken into consideration in determining whether

he claimed title or merely a lien. But these items of evidence were before the trial court along with all others when that court held plaintiff's possession to be adverse and under a claim of title. That was certainly a matter to be there determined and the judgment should not be disturbed unless it was against the clear weight of the evidence.

In a very similar situation, the Supreme Court of Montana, in the case of Anderson v. Mace et ux., 99 Mont. 421, 45 P. 2d 771, held as follows:

"Purchaser at tax sale, or his assignee, has no right of possession under certificate of sale (Rev. Codes 1921, sec. 2207).

"Possession by holder of tax sale certificate who claimed title *held* 'adverse,' notwithstanding assignee mistakenly believed he had right to possession under his certificate (Rev. Codes 1921, sec. 2207).

"Where holder of tax sale certificate, after paying delinquent taxes, took possession, holder's subsequent payment of ten years' current taxes *held* in furtherance of adverse possession, rather than by right under certificate (Rev. Codes 1921, secs. 2207, 9024).

"Claim of holder of tax sale certificate to title by adverse possession *held* not impaired, where holder paid ten years' current taxes, by fact that property was at all times assessed in name of original or record owners (Rev. Codes 1921, secs. 2002, 2036, 2207, 9024)."

In the body of the opinion the following language is used:

"Mace had no right of possession under his assigned certificate, even though he may have thought that he had such right. The payments of taxes made by him were made at a time when he was claiming the property as his own adversely to all the world. He may have been mistaken about the reasons, but the fact of his having hoisted his flag over the property is evident from the record. This principle is recognized in the case of Chambers v. Bessent, 17 N. M. 487, 134 P. 237, a New Mexico case. As we view it, the character of his possession is not so important as the actual fact that he did hold the possession. In 2 Tiffany on Real Property (2d Ed.) p. 1923, it is said: 'The emphasis just made upon the character of the wrongful possession has the unfortunate effect of obscuring the theory on which, as above stated, these statutes appear properly to operate, that is, that, like other statutes of limitation, they bar the remedy of the person rightly entitled not by reason of any merit in the wrongdoer, but by reason of the demerit of the person who, having a remedy, fails to exercise it within the time named in the statute.'

"In the discussion of a water right case, this court quoted with approval from 27 Ruling Case Law 1291, sec. 203, the following statement: 'Before a use can be adverse in the sense of this rule, it must be an invasion of the rights of the party against whom it is set up, of such a character as to afford him grounds of action, that is to say, it is the fact that the claimant has been exposed to an action which the opposite party has neglected to bring, that is seized on as the ground for presuming a grant in favor of long possession and enjoyment, the theory being that this adverse state of things would not have been submitted to if there had been no grant.' "

The former opinions of this court cited in the majority opinion are not applicable here because in all of them the tax certificate holder had admitted the title of the record owner by applying for a tax deed and by giving notice to such owner that he could redeem within a specified time before a tax deed would be obtained. That would undoubtedly bind the possessor as claiming a lien only and not the fee, prior to the issuance of a tax deed.

In the case of Honeyman v. Andrews, 124 Okla. 18, 253 P. 489, the record owner offered to redeem within the time provided in the notice and the action arose over the certificate holder's refusal to accept the redemption money.

I see no similarity between the situation in the instant case and that of an

attorning tenant as suggested in the majority opinion. A tenant enters or holds possession of lands with permission, either actual or implied, of the owner. By attornment, he recognizes, by his acts or agreement, a successor in title as his landlord, in lieu of the former owner. Obermeier v. Mattison et al., 98 Ore. 195, 193 P. 915; De Good v. Gettle, 119 Kan. 534, 240 P. 960. In the case at bar, the plaintiff, the tax certificate holder, entered and took possession of the premises without permission or right but as a trespasser. (Cases to this effect cited, supra.) Defendant was the record owner during the entire time involved. Plaintiff never recognized the title of, or made payment to, or for the benefit of any one. Plaintiff did not recognize the title or right to possession of any one other than himself. Therefore, every element of tenancy and attornment is entirely lacking. The sole question is whether or not the possession of plaintiff was *with a claim of ownership* in himself.

My conclusion is that the instant case was tried and decided by the lower court upon conflicting evidence relative to all the essential elements of prescriptive title including actual occupation, hostility to and exclusion of the true owner, and claim of ownership in himself. I therefore believe that the judgment is not against the clear weight of the evidence and should be affirmed.

I therefore respectfully dissent.

I am authorized to state that Mr. Justice O'NEAL concurs in the above dissenting views.